578

[No. 27345-4-II.   Division Two.   April 12, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. GREGORY LEVI
RANDOLL, *Appellant*.

*Joanne E. Dantonio*, for appellant (appointed counsel for appeal).

*Russell D. Hauge, Prosecuting Attorney*, and *Randall A. Sutton, Deputy*, for respondent.

QUINN-BRINTNALL, J. — Gregory Randoll appeals his 24-month exceptional sentence imposed after he pleaded guilty to second degree assault. On February 23, 2001, Randoll punched Ashish Sharma in the head, knocking him backward headfirst onto the asphalt pavement. The sentencing court imposed an exceptional sentence based on its finding of two aggravating factors: (1) Sharma was particularly vulnerable because he did not have the chance to protect himself, and (2) his severe, life-threatening injuries were more serious than typical for the offense of second degree assault. Randoll argues on appeal that the record does not support the court's victim vulnerability determination. He also argues that the court violated the real facts doctrine in relying on Sharma's injuries to impose an exceptional sentence, and that the severity of the injuries was not a substantial and compelling reason to depart from the standard range. We hold that the court properly relied on the severity of Sharma's injuries to impose an exceptional sentence, and affirm.

## FACTS

On the evening of February 23, 2001, Gregory Randoll and his friends were leaving an amateur boxing competition at the Kitsap Pavilion Arena when they got into an altercation with another group. Randoll punched Ashish Sharma on the side of the head. The blow knocked Sharma backward headfirst onto the asphalt pavement; he lapsed into a seizure and fell into a week-long coma. His injuries

required two brain surgeries involving the removal of sections of his skull to relieve substantial brain swelling and installation of plates in his head.

Randoll pleaded guilty to second degree assault. Based on his unchallenged offender score of two, his standard range was 12 to 14 months' confinement. The State recommended a 24-month exceptional sentence. It argued that Sharma was particularly vulnerable because Randoll blindsided Sharma from behind and Sharma never had a chance to protect himself. Randoll disputed the State's account of the assault. In his written statement, Randoll stated that he struck Sharma *after* Sharma hit him in the glasses.

A real facts hearing followed. Four of Sharma's friends testified that Randoll approached Sharma from behind and lunged forward when he punched Sharma on the side of the head. Randoll testified that he threw a single punch at Sharma after someone elbowed him in the face and broke his (Randoll's) glasses.

The sentencing court found that (1) Sharma was standing next to a curb above an adjacent paved parking area and did not see Randoll, and (2) Sharma's injuries were severe and life-threatening, requiring two brain surgeries with medical expenses between $300,000 and $400,000. From these findings, the court concluded:

A.   Sharma's position at the time of the assault in close proximity to the edge of a curb above a paved area was known to Randoll and made Sharma particularly vulnerable to a level of injury greater than is typical for a second degree assault case, because there existed no opportunity for Sharma to protect himself from a severe blow or from the consequences of the blow. This vulnerability was a substantial factor in the commission of the crime. [Citation omitted.]

B.   Sharma's injuries were life-threatening and were significantly more serious than those typical for a second degree assault case, in light of the significant and costly medical procedures necessary to treat the injuries to Sharma's head and brain. [Citation omitted.]

Clerk's Papers at 42. It ruled that these aggravating circumstances, individually and taken together, were sufficient cause to impose an exceptional sentence. The court sentenced Randoll to 24 months' confinement, double the low end of the standard range. He now appeals.

We answer one question: Does the severity of Sharma's injuries justify the 24-month exceptional sentence? We hold that it does.

## ANALYSIS

■ The sentencing court may impose an exceptional sentence when there are substantial and compelling reasons to do so. Former RCW 9.94A.120(2) (1999). This court reviews an exceptional sentence using a three-part test: (1) Under the "clearly erroneous" standard, are the reasons given supported by evidence in the record? (2) Do the reasons stated by the court justify a departure from the standard range as a matter of law? (3) Did the trial court abuse its discretion by imposing a sentence that is clearly too excessive? *State v. Garza*, 123 Wn.2d 885, 889, 872 P.2d 1087 (1994); former RCW 9.94A.210(4) (1989).

I. VICTIM'S INJURIES MORE SERIOUS THAN TYPICAL

A. Real Facts Doctrine

■ Randoll makes a two-part challenge to the court's finding that Sharma's injuries warranted an exceptional sentence. He first argues that the court violated the real facts doctrine by considering unstipulated evidence of the victim's injuries. The "real facts" doctrine requires the sentence be based on the defendant's current conviction, his criminal history, and the circumstances surrounding the crime. *State Morreira*, 107 Wn. App. 450, 458, 27 P.3d 639 (2001); *State v. Taitt*, 93 Wn. App. 783, 790, 970 P.2d 785 (1999), *review denied*, 145 Wn.2d 1013 (2001). A court cannot base an exceptional sentence on unstipulated facts that establish elements of a more serious or uncharged crime. *State v. Hooper*, 100 Wn. App. 179, 186, 997 P.2d 936 (2000).

■ When disputed facts exist, the court must conduct an evidentiary hearing. RCW 9.94A.530(2) (formerly RCW 9.94A.370(2) (2000));[1] *see also State v. Talley*, 83 Wn. App. 750, 757, 923 P.2d 721 (1996), *aff'd*, 134 Wn.2d 176 (1998). Based on the evidence presented at such hearing, the court makes factual determinations. Here, the court's findings of fact II and III set forth the nature and extent of Sharma's injuries. Randoll does not assign error to these findings; thus, they are verities on appeal. *State v. Gore*, 143 Wn.2d 288, 316, 21 P.3d 262 (2001).

Randoll does argue that the court could not rely on these findings to impose an exceptional sentence because they were probative of elements of the more serious, uncharged crime of first degree assault. Because Randoll was convicted of second degree assault, he must be sentenced for that crime only.

The State concedes, and we agree, that evidence of Sharma's injuries was sufficient to establish "great bodily harm," the injury element of assault in the first degree. RCW 9A.36.011(1)(c). "Great bodily harm" means bodily injury that creates a probability of death, or which causes significant, permanent loss or impairment of a bodily function. RCW 9A.04.110(4)(c). The injury element of second degree assault involves "substantial bodily harm," defined as bodily injury involving a temporary but substantial disfigurement or impairment of a bodily function. RCW 9A.04.110(4)(b); RCW 9A.36.021(1)(a).

■ Thus, while the evidence established the injury element of assault in the first degree, the evidence did not

---

[1] RCW 9.94A.530(2) provides that:

In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgment includes not objecting to information stated in the presentence reports. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence. Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the standard sentence range except upon stipulation or when specifically provided for in RCW 9.94A.535(2)(d), (e), (g), and (h).

establish the mens rea element, i.e., intent to inflict great bodily harm. RCW 9A.36.011(1). "Intent to injure" is not an element of second degree assault. RCW 9A.36.021(1)(a). Because the evidence does not satisfy *all* the elements of the more serious crime, the court did not violate the real facts doctrine by relying on the victim's injuries to impose an exceptional sentence.

Under the "real facts" doctrine a defendant may not be sentenced for a crime the State could not or chose not to prove. *State v. Swanson*, 45 Wn. App. 712, 714, 726 P.2d 1039 (1986). Thus, it precludes the unjust situation where the State proves a lesser crime beyond a reasonable doubt but then obtains an exceptional sentence for a greater crime based on facts proven by the lesser, mere preponderance standard. *Taitt*, 93 Wn. App. at 790; *see Hooper*, 100 Wn. App. at 186. Here, where the facts do not establish all the elements of a greater, uncharged offense, the real facts doctrine is not offended. *Cf. Morreira*, 107 Wn. App. at 459-60 (improper exceptional sentence for second degree assault based on trial court's reliance on evidence that showed the defendant's intent to kill and all other elements of first degree assault); *Swanson*, 45 Wn. App. at 714-16 (real facts doctrine violated where the findings supporting an exceptional sentence for taking a motor vehicle without permission constituted *all* the elements of the greater offense of first degree malicious mischief). Thus, Randoll's real facts claim fails.

B. Aggravating Factor

Randoll argues that the seriousness of Sharma's injuries was not a substantial, compelling reason to support an exceptional sentence. Whether the court's stated reason is a substantial and compelling reason to justify an exceptional sentence is a question of law which we review de novo. *State v. Jeannotte*, 133 Wn.2d 847, 857, 947 P.2d 1192 (1997). Valid aggravating factors are those not necessarily considered by the Legislature in defining the crime and setting the standard range. *Jeannotte*, 133 Wn.2d at 857; *State v. Wilson*, 96 Wn. App. 382, 387, 980 P.2d 244 (1999),

*review denied*, 139 Wn.2d 1018 (2000). Here, the severity of Sharma's injuries satisfied this criterion. Sharma's injuries were extensive and not typical for the offense of second degree assault.

Harm sustained by the victim significantly more serious than what is typically involved in the crime is a valid aggravating factor that justifies an exceptional sentence. *Wilson*, 96 Wn. App. at 388. Our review of this particular factor is limited to determining "whether there is sufficient evidence in the record to persuade a fair-minded person that [the victim's] injuries were substantially greater or significantly more serious than typical for a second degree assault case." *Wilson*, 96 Wn. App. at 388. Sharma's injuries required two brain surgeries and his medical expenses at the time of sentencing were between $300,000 and $400,000. Sharma was facing at least one other surgery to install a plate in his head to protect his brain. He is expected to have a plate and screws in his head for the remainder of his life. He was unable to drive at the time of sentencing and had to postpone his education and his wedding. This is sufficient to persuade a fair-minded person that Sharma's severe, life-threatening injuries and the extensive medical procedures required to treat them were more serious than typical for second degree assault. Thus, the sentencing court did not err in relying on this reason to depart from the standard range. *See, e.g., Wilson*, 96 Wn. App. at 388-89 (trial court's determination that the degree of harm was substantially greater than typical for second degree assault, where the victim's finger injury required surgery and she suffered psychological distress on learning that the attack may have been sexually motivated).[2]

II. Not Clearly Excessive

Randoll does not assert nor do we find the 24-month sentence to be clearly excessive; the court did not abuse its

---

[2] We find unpersuasive Randoll's attempt to distinguish *Wilson* on the basis that the victim there suffered "collateral injuries not directly related to the physicality of the assault." Br. of Appellant at 14. In our view, it is immaterial whether the injuries were collateral or directly resulted from the assault.

discretion in imposing an exceptional sentence of this length. *See State v. Negrete,* 72 Wn. App. 62, 71, 863 P.2d 137 (1993), *review denied,* 123 Wn.2d 1030 (1994) (noting there are many cases upholding exceptional sentences of double the presumptive range).

The sentencing court explicitly stated that it would impose the same 24-month sentence based on the severity of Sharma's injuries alone. Thus, we need not address Randoll's challenge to the validity of the trial court's finding that Sharma was particularly vulnerable.[3] *See Negrete,* 72 Wn. App. at 71.

Affirmed.

HUNT, C.J., and BRIDGEWATER, J., concur.

---

[3] Randoll argues, pro se, that the intoxicated state of Sharma and his friends provoked the incident. To the extent that this is a self-defense claim, he waived it by pleading guilty.